UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BETHANY ALTHEIM,

    Plaintiff,

v.      Case No. 8:10-cv-156-T-24 TBM

GEICO GENERAL INSURANCE
COMPANY,

    Defendant.
_____/

## ORDER

This cause comes before the Court on Defendant's Amended Motion for Summary Judgment. (Doc. No. 38). Plaintiff opposes the motion. (Doc. No. 41). For the reasons explained below, Defendant's motion is largely denied.[1]

## I. Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006)(citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be

---

[1] Defendant has also filed a motion for leave to file a reply brief (Doc. No. 42), which Plaintiff opposes (Doc. No. 45). In its motion to file a reply, Defendant attempts to re-argue points that it made in its motion for summary judgment. As such, the Court finds that Defendant's proposed reply brief is unnecessary.

decided at trial. See id. (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. See id. (citation omitted).

## II. Background

Defendant GEICO issued a Florida automobile liability insurance policy to Plaintiff Bethany Altheim that provided Uninsured/Underinsured Motorist ("UM") coverage in the amount of $10,000 per person and $20,000 per occurrence. The policy also provided $10,000 in Personal Injury Protection ("PIP") coverage.

On December 18, 2006, while the insurance policy was in force, Plaintiff was involved in a car accident with Meredith Tucker, in which Tucker rear-ended Plaintiff's car. (Doc. No. 38, Ex. B). The police issued Tucker a traffic citation for driving too close to Plaintiff. (Doc. No. 38, Ex. B). Plaintiff reported the accident to Defendant that day and advised that she was on her way to the hospital for treatment. The police report indicated that Tucker had insurance, and by January 4, 2007, Defendant had confirmed that Progressive provided Bodily Injury ("BI") liability coverage to Tucker in the amount of $25,000 per person and $50,000 per occurrence.

On January 18, 2007, Defendant interviewed Plaintiff about the accident. Plaintiff told Defendant that as a result of the accident, she suffered injury to her neck, lower back, and hips and that she was treating with a chiropractor, orthopedic surgeon, and neurologist. (Doc. No. 41, Ex. A, GLC 2625). She also stated that her x-rays and MRIs showed bulging and protrusion of her discs, a tear in a disc, and spasms. (Doc. No. 41, Ex. A, GLC 2625).

After the accident, Defendant paid Plaintiff $10,0000 in PIP benefits under her policy for

the treatment of her injuries. In June of 2007, Plaintiff's attorney told Defendant that she was not sure if Plaintiff had reached maximum medical improvement and that she would forward a demand once she obtained all of Plaintiff's medical information. (Doc. No. 38, Ex. M).

On July 9, 2007, Plaintiff's attorney sent a demand letter to Progressive and Defendant. (Doc. No. 41, Ex. E). In the letter, she offered to settle Plaintiff's claim against Progressive in exchange for Progressive's BI policy limit of $25,000, as long as Defendant waived its right to subrogation. (Doc. No. 41, Ex. E). Additionally, she offered to settle Plaintiff's claim against Defendant in exchange for Defendant's UM policy limit of $10,000. (Doc. No. 41, Ex. E).

In the demand letter, Plaintiff's counsel described, in detail, Plaintiff's injuries, the doctors she was treating with, and the treatments she was undergoing. (Doc. No. 41, Ex. E). She attached the medical records from the hospital and the three doctors that were treating Plaintiff. (Doc. No. 41, Ex. E). She pointed out that as a result of the accident, Plaintiff had suffered a 23% permanent impairment to her body and had reached maximum medical improvement. (Doc. No. 41, Ex. E). Additionally, she stated that despite the PIP and health insurance payments of approximately $12,000 that Plaintiff had already received, Plaintiff still had outstanding medical bills of almost $4,800 as a result of the accident. (Doc. No. 41, Ex. E). Further, she stated that Plaintiff's future medical expenses were estimated to be $3,000 per year. (Doc. No. 41, Ex. E). Since Plaintiff was 32 years old at the time of the accident, Plaintiff's counsel estimated that Plaintiff's future medical expenses would be at least $148,500 (based on a life expectancy of another 49.5 years). (Doc. No. 41, Ex. E). If Plaintiff elected to have lumbar surgery, the cost for the surgery would be $35,000 to $40,000. (Doc. No. 41, Ex. E).

Progressive agreed to pay Plaintiff the $25,000 BI limit, and Defendant agreed to waive

its right of subrogation. (Doc. No. 38, Ex. Q). Given that Plaintiff had almost $4,800 in outstanding medical bills at the time of her settlement with Progressive, that settlement left her only approximately $20,200 for future medical bills. On August 7, 2007, Defendant rejected Plaintiff's offer to settle her claim for the $10,000 UM policy limit, stating that it believed that Plaintiff had been adequately compensated. (Doc. No. 38, Ex. Q). As such, Defendant offered Plaintiff $500 to settle her claim. (Doc. No. 38, Ex. Q).

In response to Defendant's August 7, 2007 offer, Plaintiff's counsel sent Defendant a letter on August 10, 2007 stating that Plaintiff would agree to settle her claim for $9,000. (Doc. No. 38, Ex. R). Additionally, Plaintiff's counsel enclosed a Civil Remedy Notice of Insurer Violation with the letter, in which she checked the box for "Unsatisfactory Settlement Offer" and stated that Defendant had "failed to attempt to resolve this claim despite evidence that the claim exceeds the available coverage." (Doc. No. 38, Ex. S). On September 7, 2007, Defendant responded by reiterating its position that Plaintiff had been adequately compensated and reaffirming its $500 settlement offer. (Doc. No. 38, Ex. T).

Thereafter, on November 26, 2007, Plaintiff filed suit against Defendant in state court for breaching the insurance policy by failing to pay her UM benefits under the policy. (Doc. No. 38, Ex. W). On March 14, 2008, Plaintiff served Defendant with a Proposal for Settlement, in which she proposed to settle her claims against Defendant for $15,000. (Doc. No. 38, Ex. X). On June 22, 2008, Defendant served Plaintiff with a Proposal for Settlement, in which it proposed to settle her claims for $10,000. (Doc. No. 38, Ex. Z). Plaintiff did not accept Defendant's proposal.

In May of 2009, Plaintiff underwent surgery for her injuries. On December 15, 2009, the

state court entered a final judgment against Defendant for $750,000, pursuant to a stipulation by the parties. (Doc. No. 11, Ex. C). In the judgment, the state court reserved jurisdiction to award Plaintiff reasonable attorneys' fees due to her Proposal for Settlement. (Doc. No. 11, Ex. C).

On December 21, 2009, Plaintiff filed a second lawsuit in state court against Defendant, in which she alleged that Defendant had acted in bad faith when it failed to settle her claim for UM benefits, in violation of Florida Statute § 624.155. On January 19, 2010, Defendant removed the case to this Court. Currently pending before the Court is Defendant's motion for summary judgment.

### III.  Motion for Summary Judgment

Plaintiff claims that Defendant violated Florida Statute § 624.155(1)(b)(1), which provides that a person can bring suit against an insurer for "[n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests." As a condition precedent to filing suit, the plaintiff must give the insurer and the Department of Insurance 60 days' written notice of the violation. Fla. Stat. § 624.155(3)(a).

Defendant contends that it is entitled to summary judgment and makes three arguments in support: (1) Plaintiff's CRN was not sufficiently specific to satisfy Florida law; (2) Defendant did not act in bad faith when it failed to settle Plaintiff's UM claim because it disputed the value of her claim; and (3) Plaintiff's allegation in the CRN that Defendant "failed to attempt to resolve" her claim is contradicted by the evidence of Defendant's settlement attempts. Alternatively, Defendant argues that: (1) the Court should grant partial summary judgment on all of the allegations in Plaintiff's amended complaint that are not specifically set forth in her CRN;

and (2) Plaintiff is not entitled to attorneys' fees and costs relating to her underlying claim of breach of the insurance policy asserted in the first lawsuit, because her Proposal for Settlement was invalid. Accordingly, the Court will address each argument.

### A. Specificity of the CRN

As previously stated, as a condition precedent to filing suit, Plaintiff must give Defendant and the Department of Insurance 60 days' written notice of the alleged violation. Fla. Stat. § 624.155(3)(a). The CRN must state with specificity the facts and circumstances giving rise to the violation. Fla. Stat. § 624.155(3)(b). Within twenty days after it receives the notice, the Department of Insurance can return any notice that does not provide the specific information required by the statute and indicate the specific deficiencies contained in the notice. Fla. Stat. § 624.155(3)(c). In describing the statutory notice requirement, the Florida Supreme Court has stated that "the Legislature provided this sixty-day window as a last opportunity for insurers to comply with their claim-handling obligations when a good-faith decision by the insurer would indicate that contractual benefits are owed." Talat Enterprises, Inc. v. Aetna Cas. & Surety Co., 753 So. 2d 1278, 1284 (Fla. 2000).

In the CRN in the instant case, Plaintiff checked the box for "Unsatisfactory Settlement Offer" and stated that Defendant "has failed to attempt to resolve this claim despite evidence that the claim exceeds the available coverage." (Doc. No. 38, Ex. S). Defendant argues that it is entitled to summary judgment because this allegation in the CRN was not sufficiently specific to put Defendant on notice as to the specific conduct of which Plaintiff complained, nor did it set forth the action that Defendant could have taken to cure the alleged violation. The Court finds this argument to be disingenuous at best.

A fair reading of the CRN gives Defendant notice of the specific wrongful conduct at issue–Defendant's failure to settle Plaintiff's claim due to an unsatisfactory settlement offer. Furthermore, common sense suggests that the action Defendant could have taken to cure the alleged violation would be to increase the amount offered to settle Plaintiff's claim. Plaintiff is not required to delineate in the CRN the specific amount necessary to settle her claim. See Dellavecchia v. GEICO General Ins. Co., 2010 WL 1377048, at *3 (M.D. Fla. Mar. 15, 2010), Report and Recommendation adopted by 2010 WL 1376953 (M.D. Fla. April 5, 2010); Porcelli v. OneBeacon Ins. Co., Inc., 635 F. Supp.2d 1312, 1318 (M.D. Fla. 2008). Additionally, the Court notes that there is no evidence before the Court that the Department of Insurance returned the notice for lack of specificity. See Porcelli, 635 F. Supp.2d at 1318 (considering the fact that the Department of Insurance did not return the notice for lack of specificity). Accordingly, the Court denies Defendant summary judgment on this issue.

### B. Whether Defendant Acted in Bad Faith

Next, Defendant argues that it is entitled to summary judgment because it did not act in bad faith when it failed to settle Plaintiff's UM claim because it disputed the value of her claim. As explained below, the Court finds that a genuine issue of material fact precludes summary judgment on this issue.

In order to avoid a finding of bad faith, an insurer must "investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." Boston Old Colony Ins. Co. v. Gutierrez, 386 So. 2d 783, 785 (Fla. 1980)(citations omitted). When evaluating the issue of whether an insurer acted in bad faith, the totality of the

circumstances must be considered. See State Farm Mutual Automobile Ins. Co. v. Laforet, 658 So. 2d 55, 62 (Fla. 1995). Generally, the issue of whether an insurer acted in bad faith in failing to settle a claim is a question of fact for the jury to decide. See Gutierrez, 386 So. 2d at 785 (citation omitted); Berges v. Infinity Ins. Co., 896 So. 2d 665, 672 (Fla. 2005).

In this case, Plaintiff made a demand for the $10,000 UM policy limit on July 9, 2007. Enclosed with the demand was a description of her injury and her doctor's conclusion that she suffered a 23% permanent impairment to her body, an estimate of her future medical costs exceeding $148,000 (her past medical bills totaled almost $17,000), and all of her medical records. After Progressive settled her claim and she paid her outstanding, past medical bills, Plaintiff only had approximately $20,000 left to pay for her future medical costs. In its August 7, 2007 and September 7, 2007 response letters to Plaintiff, Defendant stated that based on its review of the medical records provided, Plaintiff had already been adequately compensated. (Doc. No. 38, Ex. Q & T). However, Defendant does not explain how it came to that conclusion and/or why it discounted the estimation of Plaintiff's future medical costs. Accordingly, the Court finds that there is a genuine issue of material facts as to whether Defendant fairly considered Plaintiff's settlement offers in light of the facts that it had, and as such, an issue remains as to whether its failure to settle Plaintiff's claim was unreasonable. Therefore, summary judgment on this issue is denied.

### C. Evidence Relating to the Allegations in the CRN

Next, Defendant argues that it is entitled to summary judgment because Plaintiff's allegation in the CRN that Defendant "failed to attempt" to resolve her claim is contradicted by the evidence in this case. Specifically, Defendant points to the fact that it attempted to settle

Plaintiff's claim several times, including its August 7, 2007 and September 7, 2007 offers to settle her claim for $500. Again, this Court rejects Defendant's argument.

Defendant's semantics argument, in which it focuses on the word "attempt," is unavailing, given that the statute itself describes the violation as "[n]ot *attempting* in good faith to settle claims." Fla. Stat. § 624.155(1)(b)(1) (emphasis added). Clearly, Plaintiff is alleging that Defendant's unsatisfactory (i.e., low) settlement offer was due to its failure to attempt to settle Plaintiff's claim in good faith. The Court has already found that there is a genuine issue of material fact regarding whether Defendant attempted in good faith to settle Plaintiff's claim, and as such, the Court denies summary judgment on this issue.

### D.  Allegations in the Complaint that Are Not Contained in the CRN

Alternatively, Defendant argues that it is entitled to partial summary judgment on all of the allegations in Plaintiff's amended complaint that are not specifically set forth in her CRN, because Defendant was not given the requisite statutory notice of those alleged violations. The Court finds this argument to be somewhat unnecessary, as Plaintiff is only asserting a violation of § 624.155(1)(b)(1) for bad faith failure to settle her UM claim.

In her amended complaint, Plaintiff states that Defendant acted in bad faith by failing to settle her claim, as well as by: (1) failing to adopt and implement proper standards for claims investigation, (2) failing to conduct a reasonable investigation of her claim, and (3) failing to acknowledge and act promptly upon communication with respect to her claim. (Doc. No. 11, ¶ 11). While Defendant is correct that these additional examples cannot constitute separate violations for which Plaintiff can seek an additional remedy, the Court also notes that this conduct would be relevant to her claim of bad faith failure to settle. As such, Plaintiff can use

evidence of this conduct to show that Defendant did not attempt in good faith to settle her claim when, under all the circumstances, it could and should have done so, had it been acting fairly and honestly toward her and with due regard for her interests. Accordingly, the Court grants Defendant's motion to the limited extent that Plaintiff cannot attempt to recover on any claim other than her claim of bad faith failure to settle.

### E. Attorneys' Fees and Costs Relating to the Underlying First Lawsuit

Defendant also argues that Plaintiff is not entitled to attorneys' fees and costs relating to her underlying claim of breach of the insurance policy asserted in the first lawsuit, because her Proposal for Settlement was invalid. The Court finds that this Court is not the proper forum for this argument, as it relates to the first state court case, in which the state court specifically reserved jurisdiction to award attorneys' fees due to Plaintiff's Proposal for Settlement. As such, the Court denies the motion on this issue.

## IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Defendant's Amended Motion for Summary Judgment (Doc. No. 38) is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** to the limited extent that Plaintiff cannot attempt to recover on any claim other than her claim of bad faith failure to settle; otherwise, Defendant's motion is **DENIED**.

(2) Defendant's Motion for Leave to File a Reply (Doc. No. 42) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 18th day of January, 2011.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record