UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BETHANY ALTHEIM,

    Plaintiff,

v.                                                                     Case No. 8:10-cv-156-T-24 TBM

GEICO GENERAL INSURANCE
COMPANY,

    Defendant.
_____/

## ORDER

This cause comes before the Court on three motions in limine filed by Plaintiff:

- Plaintiff's Motion in Limine to Prohibit State of Mind Testimony (Doc. No. 80), which Defendant opposes (Doc. No. 91)

- Plaintiff's Motion in Limine Regarding Testimony From Defendant's Expert Witness and Others (Doc. No. 79), which Defendant opposes (Doc. No. 92)

- Plaintiff's Motion in Limine to Prohibit Attempts to Elicit Privileged Materials and Communications (Doc. No. 81), which Defendant opposes (Doc. No. 90)

Additionally, Defendant filed five motions in limine:

- Defendant's Motion in Limine Regarding Personal Opinions About Insurance Companies, References to Advertising, and Payment of Premiums (Doc. No. 82), which Plaintiff opposes (Doc. No. 95)

- Defendant's Motion in Limine Regarding Claims Manuals and Training Materials (Doc. No. 85), which Plaintiff opposes (Doc. No. 98)

- Defendant's Motion in Limine to Preclude Plaintiff From Arguing that Defendant's

> Payment of PIP Benefits is Evidence that Defendant Should Have Also Paid UM Benefits (Doc. No. 86), which Plaintiff opposes (Doc. No. 96)

- Defendant's Motion in Limine Regarding Evidence Post-Dating Its Response to Plaintiff's Civil Remedy Notice (Doc. No. 84), which Plaintiff opposes[1] (Doc. No. 94)

- Defendant's Motion in Limine Regarding Arguments that Defendant Owed Plaintiff a Fiduciary Duty or that Defendant Was Obligated to Seek Out Facts Supporting Her Claim and Pay Her the Policy Benefit (Doc. No. 83), which Plaintiff opposes[2] (Doc. No. 97)

Accordingly, the Court will address each motion.

**I. Background**

Defendant GEICO issued a Florida automobile liability insurance policy to Plaintiff Bethany Altheim that provided Uninsured/Underinsured Motorist ("UM") coverage in the amount of $10,000 per person and $20,000 per occurrence. On December 18, 2006, while the insurance policy was in force, Plaintiff was involved in a car accident with Meredith Tucker and reported the accident to Defendant.

On July 9, 2007, Plaintiff's attorney sent a demand letter to Defendant, offering to settle her claim against Defendant in exchange for Defendant's UM policy limit of $10,000. On

---

[1] Additionally, Defendant seeks leave to file a reply brief to Plaintiff's opposition to its motion in limine. (Doc. No. 102). However, the Court finds that a reply brief is not necessary, and as such, denies the motion for leave to file a reply.

[2] Additionally, Defendant seeks leave to file a reply brief to Plaintiff's opposition to its motion in limine. (Doc. No. 101). However, the Court finds that a reply brief is not necessary, and as such, denies the motion for leave to file a reply.

August 7, 2007, Defendant rejected Plaintiff's offer to settle her claim for the $10,000 UM policy limit. Thereafter, on August 10, 2007, Plaintiff sent Defendant a letter offering to settle her claim for $9,000, and she enclosed a Civil Remedy Notice of Insurer Violation ("CRN") with the letter. In the CRN, Plaintiff checked the box for "Unsatisfactory Settlement Offer" and stated that Defendant had "failed to attempt to resolve this claim despite evidence that the claim exceeds the available coverage." On September 7, 2007, Defendant rejected her second settlement offer.

Thereafter, on November 26, 2007, Plaintiff filed suit against Defendant in state court for breaching the insurance policy by failing to pay her UM benefits under the policy. On December 15, 2009, the state court entered a final judgment against Defendant for $750,000, pursuant to a stipulation by the parties. On December 21, 2009, Plaintiff filed the instant bad faith lawsuit.

## II. Plaintiff's Motions in Limine

### A. Motion to Exclude State of Mind Evidence (Doc. No. 80)

Plaintiff moves to prohibit Defendant's witnesses from testifying about the state of mind of any other party or witness, including Altheim's willingness to settle. Defendant opposes the motion, arguing that Plaintiff fails to define exactly what type of state of mind testimony she is seeking to prohibit and that the motion is vague. The Court agrees that the motion over-broad and is unclear as to what specific testimony Plaintiff is seeking to exclude. In addition, the Court is not prepared to agree at this time that state of mind testimony can only be elicited from expert witnesses or that Plaintiff's willingness to settle is speculative or irrelevant. Plaintiff can make objections at trial where appropriate. As such, the motion is denied without prejudice.

**B.  Motion to Exclude Testimony of Defendant's Expert Witness and Others (Doc. No. 79)**

In this motion, Plaintiff requests that the Court exclude the testimony of any defense expert or witness that is biased against any profession, claims to address the state of mind of any person, or renders expert medical opinions where they have not been tendered as a medical expert.  Specifically, Plaintiff argues that Defendant's expert, Kathy Maus, an attorney who was hired as a defense expert regarding claims handling, has a bias against chiropractors and chiropractic medicine, will attempt to testify regarding Plaintiff's doctor's state of mind (Dr. Martinez), and may attempt to testify regarding her medical opinions despite the fact that she is not a doctor.

Defendant responds that Plaintiff's motion is overly broad and vague and that Maus' proposed testimony is within her expertise and will be helpful to the jury.  Defendant argues that Maus will testify, based on her extensive experience in claims handling, about the reasonableness of Defendant's claims handling decisions in light of the information that Defendant had.  Furthermore, Defendant contends that Maus "must be permitted to interpret medical records based on her particular expertise" and that "Maus has become very familiar with and proficient in evaluating medical information to reach a reasonable claim value."  (Doc. No. 92).

The Court agrees that Maus cannot give medical opinion testimony, as she is not a doctor, and to that extent, the motion is granted.  Thus, while Maus may point out that Plaintiff's doctors' opinions conflict with other doctors' opinions, Maus cannot testify as to her own medical opinion.  However, she can interpret the medical records based on her expertise in claims handling practices and procedures.

To the extent that Plaintiff wants the Court to prohibit Maus from describing her past experiences with Dr. Martinez and any similarity between his medical reports concerning Plaintiff and others, such is permissible, because it is not based on her asserting her own medical opinion.  Thus, to that extent, the motion in limine is denied.

To the extent that Plaintiff contends that Maus is biased against chiropractors and chiropractic medicine, Defendant did not directly respond to this argument.  As such, the Court grants the motion to the extent that Maus may not state, as she allegedly did in her deposition, that "'[a]s we all know, chiropractors oftentimes will treat you until your insurance runs out. They will say you need treatment until your insurance runs out.'" (Doc. No. 79).

Defendant asks that if the Court prohibits Maus from providing her opinions regarding Plaintiff's medical records, the Court should also prohibit Plaintiff's expert, Rutledge Liles, from doing the same.  The Court agrees that Liles, who is also not a doctor, cannot give his own medical opinions.  However, to the extent that Defendant argues that Liles should be prohibited from discussing that based on Plaintiff's medical records, Plaintiff suffered a permanent injury and that surgery was recommended, the Court rejects this argument.  The Court has reviewed Liles' deposition testimony, and he has not given medical opinions on these issues–he states that the medical records refer to a permanent injury and a 23 percent impairment rating and that the medical records indicate that the doctors discussed the option of surgery with Plaintiff.  (Doc. No. 92, Ex. E).

### C.  Motion to Exclude Privileged Information (Doc. No. 81)

In this motion, Plaintiff requests that the Court prohibit Defendant from trying to elicit testimony that is covered by the attorney client privilege, work product privilege, and/or which

references questions which were previously not answered on the grounds of such privileges. Defendant opposes the motion, arguing that Plaintiff's motion is too broad and vague, and she is essentially asking the Court to uphold every privilege objection made by Plaintiff's counsel without providing the Court with any opportunity to determine the validity of Plaintiff's objections. While the Court agrees that privileged information is not admissible, the Court also agrees with Defendant that Plaintiff's motion is too broad, vague, and without sufficient foundation for the Court to review. As such, the Court will deny the motion without prejudice, and Plaintiff can make objections based on privilege at trial if and when the need arises.

### III.  Defendant's Motions in Limine

#### A.  Motion to Exclude Opinions About Insurance Companies, Advertising, and Premium Payments (Doc. No. 82)

In its motion, Defendant argues that Plaintiff should be prohibited from introducing subjective opinion testimony regarding insurance companies and from making arguments regarding Defendant's advertising campaigns and Plaintiff's payment of premiums. Defendant contends that such issues are completely irrelevant, and the probative value is clearly outweighed by the unfairly prejudicial effect. Accordingly, the Court will consider each type of evidence.

First, Defendant argues that Plaintiff should be prohibited from introducing subjective opinion testimony from lay and expert witnesses regarding insurance companies, such as having witnesses testifying regarding their good and bad experiences with other insurance companies. Plaintiff responds that such a prohibition would unfairly limit her ability to compare Defendant's conduct with industry standards so that the jury can evaluate the reasonableness of Defendant's conduct. The Court agrees with Plaintiff that such testimony, particularly expert witness

testimony, may be relevant to this case. As such, Defendant can raise any specific objections to such testimony at trial if and when the need arises.

Next, Defendant argues that Plaintiff should be prohibited from making arguments regarding Defendant's advertising campaigns, because its advertising campaigns are irrelevant to the issue of whether Defendant acted in bad faith. Plaintiff responds that evidence regarding her reliance on the advertising campaigns when selecting Defendant as her insurer is relevant. The Court disagrees, as her selection of an insurer has no bearing on the issue of whether her insurer acted in bad faith. As such, the Court grants Defendant's motion as to the issue of its advertising campaigns.

Next, Defendant argues that Plaintiff should be prohibited from making arguments regarding the fact that she is current on her payment of premiums, because the only purpose of such information would be to unfairly prejudice the jury against Defendant. Plaintiff responds that such evidence is relevant to show that a valid insurance contract existed. The Court rejects this argument, because the validity of the insurance contract in this case is not at issue.

Plaintiff also argues that her payment of premiums is relevant if Defendant challenges her veracity. The Court rejects this argument, as it fails to see the connection between evidence of her paying her premiums and evidence of her veracity. As such, the Court finds evidence of Plaintiff's payment of her premiums to be irrelevant to the issues in this case and grants Defendant's motion on this issue.

### B.  Motion to Exclude Claims Manuals and Training Materials (Doc. No. 85)

In this motion, Defendant requests that the Court prohibit Plaintiff from presenting evidence regarding its alleged deviations from company policies. Defendant argues that such

evidence is irrelevant, because the inquiry should be whether Defendant acted in good faith, not whether it acted consistent with its own policies. Furthermore, Defendant argues that the probative value of such evidence would be substantially outweighed by the risk of unfair prejudice and confusing the jury. Finally, Defendant argues that such evidence is privileged under Florida's trade secret statute.

Plaintiff responds that it presumes that Defendant adopted its claims manuals and training materials in an effort to educate its employees regarding proper claims handling procedures in accordance with industry standards, and as such, failure to comply with these training manuals and materials is evidence that Defendant's conduct fell below the industry's standard of care. Additionally, Plaintiff points out that the case law is clear that such evidence is discoverable in bad faith cases. Furthermore, Plaintiff contends that this Court's summary judgment order permits such evidence to be used at trial, since this Court stated:

> In her amended complaint, Plaintiff states that Defendant acted in bad faith by failing to settle her claim, as well as by: (1) failing to adopt and implement proper standards for claims investigation, (2) failing to conduct a reasonable investigation of her claim, and (3) failing to acknowledge and act promptly upon communication with respect to her claim. (Doc. No. 11, ¶ 11). While Defendant is correct that these additional examples cannot constitute separate violations for which Plaintiff can seek an additional remedy, the Court also notes that this conduct would be relevant to her claim of bad faith failure to settle. As such, Plaintiff can use evidence of this conduct to show that Defendant did not attempt in good faith to settle her claim when, under all the circumstances, it could and should have done so, had it been acting fairly and honestly toward her and with due regard for her interests.

(Doc. No. 50, p. 9-10).

Upon consideration, the Court finds that the relevancy of such evidence falls in a gray area. The proper inquiry at trial will be whether Defendant's conduct was reasonable and proper under the circumstances. An insurance company's failure to have appropriate procedures in

place, as well as its general business practices of not doing things it should be doing, may be evidence of bad faith. However, the Court cannot say that failure to comply with company policies, manuals, and training materials will always be evidence of bad faith, since a company's policies, manuals, and training materials may contain guidelines that go "above and beyond" what is reasonable and proper under the circumstances, such that non-compliance may not be evidence of bad faith. However, if the company's policies, manuals, and training materials contain guidelines that are consistent with industry standards, then non-compliance may be evidence of bad faith. Thus, this Court cannot say at this time that all evidence of Defendant's manuals and training materials should be excluded, and it is likely that any risk of unfair prejudice and confusion can be alleviated with proper jury instructions. As such, the Court denies the motion without prejudice, and Defendant can make objections at trial if an when the need arises.

The Court notes that Plaintiff did not address Defendant's argument that this evidence is privileged under Florida's trade secret statute, § 90.506. That statute provides the following:

> A person has a privilege to refuse to disclose, and to prevent other persons from disclosing, a trade secret owned by that person if the allowance of the privilege will not conceal fraud or otherwise work injustice. When the court directs disclosure, it shall take the protective measures that the interests of the holder of the privilege, the interests of the parties, and the furtherance of justice require.

Fla. Stat. § 90.506. However, the Court notes that the privilege is not absolute "and the court may order production if the balance tips in favor of promoting the interests of facilitating the trial and doing justice as opposed to the interests of the claimant in maintaining secrecy." Auto Owners Ins. Co. v. Totaltape, Inc., 135 F.R.D. 199, 203 (M.D. Fla. 1990)(citation omitted). Therefore, if Plaintiff intends to introduce Defendant's manuals and training materials at trial and Defendant objects, Plaintiff should be prepared to address Defendant's privilege argument

9

and be ready to explain why non-disclosure of these documents at trial will result in injustice.

### C.  Motion to Exclude Argument Regarding Payment of PIP Benefits (Doc. No. 86)

In this motion, Defendant requests that the Court prohibit Plaintiff from comparing the manner in which Defendant handled Plaintiff's Personal Injury Protection ("PIP") claim to the manner in which it handled her Uninsured/Underinsured Motorist ("UM") claim to suggest that Defendant violated its duty of good faith in the handling of her UM claim.  Defendant cites several cases to support its argument that the way PIP claims and UM claims are handled by insurance companies are completely different, and as such, an insurer's payment of a PIP claim in no way reflects the legitimacy of a related UM claim.  For example, the court in USAA Casualty Ins. Co. v. Shelton, explained the differences in the handling of PIP and UM claims:

> [A] carrier's payment of PIP benefits is not an admission that its insured's claims for UM benefits are reasonable, necessary, and connected to the accident. . . . Because of the unique policy considerations underlying PIP coverage, we hold that evidence of an insurer's payment of PIP benefits is not relevant, and therefore is not admissible, to prove the propriety of claimed medical damages in a UM action.
>
> PIP coverage is designed to provide swift and virtually automatic payment so that the injured insured may get on with his life without undue financial interruption. To further this goal, the legislature enacted penalty provisions intended to promote the prompt resolution of PIP claims by imposing several penalties on insurers who pay late.
>
> \*        \*        \*
>
> Under the Florida no-fault coverage, the insurer has a short time in which to decide whether to pay a [PIP] claim and faces both interest on the claim and attorney's fees if its decision is wrong. In practice, the threat of such penalties, and the requirement that it must have reasonable proof to support its decision, combine to encourage the insurer to make the swift and virtually automatic payment of PIP claims envisioned by the PIP law. Thus, a carrier may well be induced to give the insured the benefit of the doubt and to pay a claim it might otherwise have contested. Moreover, basic PIP coverage is limited to $10,000. The insurer may conclude that its insured has suffered damages in that amount,

> but may question whether additional amounts are justified. On the other hand, if the insurer knew that evidence of its PIP payments would haunt it in litigation over a related UM claim, which invariably would involve far more than the sum at stake in the PIP coverage, the insurer would be inclined to give closer scrutiny to PIP claims. This could delay payments of those claims, contrary to the purpose of the PIP statute.
>
> An insurer is in a far different posture under UM coverage. The purpose of the insurance is to provide a source of recovery when the insured has been injured by a tortfeasor with insufficient or no insurance. Therefore, in a UM claim the insured must prove that she is legally entitled to recover from the owner or operator of the uninsured or underinsured vehicle. Just as she would in a suit against the tortfeasor, the insured bears the entire burden to prove that her claimed damages were reasonable, necessary, and related to the accident. And, unlike the case in a PIP claim, an insurer's assessment of a UM claim is unrestrained by concerns about statutory deadlines, penalties, or attorney's fees, or by the burden to develop reasonable proof that it is not responsible for the claim. For these reasons, an insurer's payment of PIP benefits in connection with an automobile accident is not relevant to the issue of whether the medical expenses claimed in the insured's UM claim are reasonable, necessary or connected to the accident. It is therefore inadmissible for that purpose.

932 So. 2d 605, 606-08 (Fla. 2d DCA 2006)(internal citations, quotation marks, and footnotes omitted); see also GEICO General Ins. Co. v. Berner, 971 So. 2d 929, 932-33 (Fla. 3d DCA 2007).

Plaintiff responds that Defendant's handling of her PIP claim is part of the totality of the circumstances that the jury must consider when evaluating Defendant's handling of her UM claim. Further, Plaintiff argues that there was significant overlap between the handling of her PIP claim and UM claim, and as such, evidence pertaining to Defendant's handling of her PIP claim is probative as to its handling of her UM claim. The Court disagrees with Plaintiff.

The considerations involved when analyzing a PIP claim are quite different from those involved when analyzing a UM claim, and as such, the Court finds that the probative value resulting from evidence of Defendant's analysis and payment of the PIP claim is substantially

outweighed by the risk of unfair prejudice. As stated by one court:

> Not only are the financial stakes almost always higher [for UM claims], but also more exacting, traditional principles of "causation'' and "foreseeability" are in play [for UM claims]. For these reasons, personal injury protection benefits examinations are likely to be more cursory than might otherwise occur, and frequently are conducted by less-credentialed or experienced medical professionals.

Berner, 971 So. 2d at 933 (internal citation and footnote omitted). As such, this Court grants the motion to the extent that Plaintiff cannot argue that Defendant's payment of her PIP claim has any bearing on whether Defendant should have paid her UM claim. Plaintiff's witnesses can testify that they reviewed information gathered from Defendant's investigation of her PIP claim, but Plaintiff's witnesses and counsel cannot make any statements that Defendant's payments of PIP benefits is evidence that Defendant should have paid Plaintiff's UM claim.

### D. Motion to Exclude Evidence Post-Dating CRN (Doc. No. 84)

Defendant moves to exclude all evidence dated after its September 7, 2007 response to Plaintiff's CRN and second offer to settle her claim within the policy limits. Alternatively, Defendant requests that the Court preclude Plaintiff from admitting the stipulated verdict and final judgment from the underlying state court case, or at the very least, prohibit Plaintiff from arguing that the stipulated verdict and final judgment from the state court case is evidence of Defendant's bad faith. As explained below, the Court denies this motion.

Defendant argues that since the CRN is required to put Defendant on notice of a first-party bad faith claim, any evidence arising after Defendant's response to the CRN is not relevant to the bad faith claim. Furthermore, Defendant argues that such evidence would confuse the jury regarding the relevant issues in the case. Finally, Defendant argues that the probative value of

such evidence is substantially outweighed by the possibility of causing unfair prejudice. The Court disagrees.

In this case, Defendant rejected Plaintiff's July 9, 2007 and August 10, 2007 offers to settle the case within the policy limits. However, by December of 2009, Defendant stipulated to a $750,000 judgment for Plaintiff's injuries that resulted from the car accident with Tucker. Plaintiff may attempt to show that by August 10, 2007, Defendant had the same information that it had in December of 2009, when Defendant finally conceded that the amount of Plaintiff's injuries exceeded the policy limit. If Plaintiff makes such a showing, such would be relevant to the issue of whether Defendant acted in bad faith by failing to accept Plaintiff's offers to settle within the policy limits in 2007. Therefore, evidence of Defendant's stipulation to a $750,000 judgment in the underlying state court proceedings is relevant to put Defendant's actions in context.

Furthermore, the Court disagrees that such evidence will confuse the jury. The jury will be given jury instructions that explain the relevant considerations, and Defendant can argue to the jury that the stipulated verdict and final judgment from the state court case is not per se evidence of Defendant's bad faith.

Given this Court's conclusion that Defendant's stipulation to the $750,000 judgment is relevant to the inquiry of whether Defendant acted in bad faith, the Court must consider whether the probative value of such evidence is outweighed by the possibility of causing unfair prejudice and/or confusing the jury. The Court finds that the possibility of causing unfair prejudice and/or confusing the jury can be avoided by properly instructing the jury. While the Court will not prohibit Plaintiff from using the stipulated verdict and final judgment from the state court case to

support its argument that Defendant acted in bad faith, the Court agrees that the stipulated verdict and final judgment, standing alone, are not proof that Defendant acted in bad faith.

### E.  Motion to Exclude Argument that Defendant Owed a Fiduciary Duty (Doc. No. 83)

In this motion, Defendant argues that Plaintiff should be prohibited from arguing that Defendant owed her a fiduciary duty or that Defendant was obligated to seek out facts supporting her claim.  Defendant contends that for first-party claims, the insured and insurer are in adversarial positions, unlike for third-party claims where the insurer owes the insured a fiduciary duty.

Plaintiff responds that recent Florida Supreme Court decisions have recognized that insurers owe their insureds a fiduciary duty in the context of both third-party and first-party claims.  Specifically, Plaintiff cites Macola v. Government Employees Ins. Co., 953 So. 2d 451 (Fla. 2006), and Allstate Indemnity Co. v. Ruiz, 899 So. 2d 1121 (Fla. 2005), to support her argument.  Plaintiff's reliance on these cases is misplaced.

In Ruiz, the Florida Supreme Court described the evolution of first-party and third-party bad faith claims:

> Florida courts recognized common law third-party bad faith actions in part because the insurers had the power and authority to litigate or settle any claim, and thus owed the insured a corresponding duty of good faith and fair dealing in handling these third-party claims.
>
> *     *     *
>
> Under liability policies . . . insurance companies took on the obligation of defending the insured, which, in turn, made insureds dependent on the acts of the insurers; insurers had the power to settle and foreclose an insured's exposure or to refuse to settle and leave the insured exposed to liability in excess of policy limits.  This placed insurers in a fiduciary relationship with their insureds . . . .
>
> *     *     *

> Traditionally and historically, the courts in this state did not, however, recognize a corresponding common law first-party action that would protect insured individuals and enable them to seek redress of harm against their insurers for the wrongful processing or denial of their own first-party claims or failure to deal fairly in claims processing. . . . Florida courts had refused to recognize the tort of first-party bad faith because the type of fiduciary duty that exists in third-party actions is not present in first-party actions and the insurer is not exposing the insured to excess liability. This void existed notwithstanding that insurers had the same incentive to deny an insured's first-party claim as may have existed with regard to the refusal to settle a claim presented by a third party against an insured.
>
> \* \* \*
>
> However, . . . the enactment of [Florida Statute] section 624.155 in 1982 . . . resolved this inequity and recognized the power disparity as it created a statutory first-party bad faith cause of action for first-party insureds, thereby eliminating the disparity in the treatment of insureds aggrieved by an act of bad faith on the part of their insurers regardless of the nature of the type of claim presented.
>
> \* \* \*
>
> The Legislature has mandated that insurance companies act in good faith and deal fairly with insureds regardless of the nature of the claim presented, whether it be a first-party claim or one arising from a claim against an insured by a third party.

Ruiz, 899 So. 2d at 1125-27 (internal citations and quotation marks omitted). Thus, after the enactment of § 624.155, "the same obligations of good faith that existed for insurers dealing with their insureds in the third-party context were extended by statute to the first-party context." Macola, 953 So. 2d at 456. Accordingly, these decisions recognize that insurers owe their insureds a duty of ***good faith*** in the context of both third-party and first-party claims.

However, recognizing that insurers owe their insureds a duty of good faith does not mean that insurers owe their insureds a fiduciary duty in the context of first-party claims. The duty to act in good faith is implied in every contract, even when a fiduciary duty does not exist. As such, the Court rejects Plaintiff's argument that insurers owe their insureds a fiduciary duty in the context of first-party claims. See State Farm Mutual Automobile Ins. Co. v. LaForet, 658 So. 2d 55, 59 (Fla 1995)(stating that "the type of fiduciary duty that exists in third-party actions is

15

not present in first-party actions); Hogan v. Provident Life & Accident Ins. Co., 2009 WL 2169850, at *4 (M.D. Fla. July 20, 2009)(stating that "there is no fiduciary relationship between an insurer and an insured" in the context of first-party claims); Hogan v. Provident Life & Accident Ins. Co., 665 F. Supp.2d 1273, 1286 (M.D. Fla. 2009); Grandrimo v. Parkcrest Harbour Island Condominium Association, Inc., 2011 WL 550579, at *4 (M.D. Fla. Feb. 9, 2011). Therefore, the Court grants Defendant's motion and prohibits Plaintiff from arguing that Defendant owed her a fiduciary duty and/or that Defendant was obligated to seek out facts supporting her claim.

**IV. Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1) Plaintiff's Motion in Limine to Prohibit State of Mind Testimony (Doc. No. 80) is **DENIED WITHOUT PREJUDICE**.

(2) Plaintiff's Motion in Limine Regarding Testimony From Defendant's Expert Witness and Others (Doc. No. 79) is **GRANTED IN PART AND DENIED IN PART**: The motion is **GRANTED** to the extent that Maus (and Liles) cannot testify as to their own medical opinions and that Maus cannot testify that "chiropractors oftentimes will treat you until your insurance runs out. They will say you need treatment until your insurance runs out." Otherwise, the motion is **DENIED**.

(3) Plaintiff's Motion in Limine to Prohibit Attempts to Elicit Privileged Materials and Communications (Doc. No. 81) is **DENIED WITHOUT PREJUDICE**.

(4) Defendant's Motion in Limine Regarding Personal Opinions About Insurance Companies, References to Advertising, and Payment of Premiums (Doc. No. 82) is **GRANTED IN PART AND DENIED IN PART**: The motion is **GRANTED** to the extent that Plaintiff is prohibited from making arguments regarding Defendant's advertising campaigns and Plaintiff's payment of premiums; otherwise the motion is **DENIED WITHOUT PREJUDICE**.

(5) Defendant's Motion in Limine Regarding Claims Manuals and Training Materials (Doc. No. 85) is **DENIED WITHOUT PREJUDICE**.

(6) Defendant's Motion in Limine to Preclude Plaintiff From Arguing that Defendant's Payment of PIP Benefits is Evidence that Defendant Should Have Also Paid UM Benefits (Doc. No. 86) is **GRANTED**.

(7) Defendant's Motion in Limine Regarding Evidence Post-Dating Its Response to Plaintiff's Civil Remedy Notice (Doc. No. 84) is **DENIED**.

(8) Defendant's Motion in Limine Regarding Arguments that Defendant Owed Plaintiff a Fiduciary Duty or that Defendant Was Obligated to Seek Out Facts Supporting Her Claim and Pay Her the Policy Benefit (Doc. No. 83) is **GRANTED**.

(9) Defendant's Motions for Leave to File a Reply (Doc. No. 101, 102) are **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 14th day of April, 2011.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record